**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DEVON FLOYD, | : | **Hon. Claire C. Cecchi** |
| Petitioner, | : | Civil No. 09-5338 (CCC) |
| v. | : | |
| MICHELLE RICCI, et al., | : | **O P I N I O N** |
| Respondents. | : | |

**APPEARANCES:**

DEVON FLOYD, #244850C
New Jersey State Prison
P.O. Box 861
Camden, New Jersey  08625
Petitioner pro se

LEEANN CUNNINGHAM, Special Deputy Attorney General
ROBERT D. LAURINO, ACTING ESSEX COUNTY PROSECUTOR
50 West Market Street
Newark, New Jersey  07102
Attorneys for Respondents

**CECCHI, District Judge**

Devon Floyd filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254

challenging a judgment entered on August 12, 2002, in the Superior Court of New Jersey, Essex

County, after a jury found him guilty of aggravated manslaughter, unlawful possession of a

handgun, and possession of the handgun for an unlawful purpose, in violation of N.J. Stat. Ann.

§§ 2C:11-4, 2C:39-5b, 2C:39-4a.  Respondents filed an Answer on November 5, 2010.  Although

given an extension of time to do so, Petitioner did not file a Reply.  For the reasons expressed

below, this Court will dismiss the Petition with prejudice and decline to issue a certificate of appealability.

# I. <u>BACKGROUND</u>

In 2002, a jury found Petitioner guilty of aggravated manslaughter, unlawful possession of a handgun, and possession of a handgun for an unlawful purpose, in violation of N.J. STAT. ANN. §§ 2C:11-4, 2C:39-5b, 2C:39-4a.  By judgment of conviction entered August 12, 2002, the Law Division sentenced Petitioner to an aggregate term of thirty years in prison.  Pursuant to the No Early Release Act ("NERA"), Petitioner is to serve at least an 85% of the imposed sentence before he is eligible for parole.  See N.J. Stat. Ann. § 2C:43-7.2e.

The pertinent facts, as recounted by the Appellate Division of the Superior Court of New Jersey, are as follows:

> At about 10 p.m. on the night of December 18, 2000, Melanie Barnes, Gregory Shelton's fiancée, was at 325 Mechanic Street in Newark, looking for him.  Barnes eventually met Shelton in the first floor hallway.
>
> Shelton, Barnes and Shonda Oliver, a friend of Barnes and Shelton, were in the hallway when defendant approached them announcing that he had a baby and wanted a congratulatory hug.  Shelton complied.  Defendant asked Barnes for a congratulatory hug, but out of respect for her fiancé, she declined and offered defendant her hand.  Barnes had previously dated defendant and had known him for about ten years.  Defendant asked Shelton if he would be mad if he gave Barnes a hug.  Shelton asked him why he wanted to hug Barnes.  Barnes again declined to give defendant a hug, and he left the building.
>
> Barnes and Shelton were outside the building when defendant pulled up in a car and told Shelton to wait there because he would be back.  Barnes was nervous and asked Shelton to leave with her. She testified that Shelton went up to the second floor and was discussing with "cousin Duane" Paige and "Bones" whether defendant would return, when one of the three, possibly Bones, looked out a window and spotted defendant.  Shelton, Bones, and Paige went downstairs without Barnes.

Paige went down to the first floor and saw defendant go toward the back steps of the apartment building. Paige said defendant was carrying a gun pointed at the floor in his right hand. Defendant asked Paige where he could find Shelton. Following defendant, Paige observed Shelton coming through the back stairway door. Paige saw defendant shoot Shelton. No one else was present. Defendant turned, walked past Paige, and left the building.

Paige testified that he had sniffed heroin on the day of the murder, but that it did not impair his ability to know who shot Shelton. At the time of trial, Paige was serving a sentence on multiple burglary convictions.

Barnes heard a shot and ran to the first floor where she saw people running, Paige knocking on an apartment door, and Shelton lying on the ground. Barnes did not see the shooting, did not see defendant leave the scene, and did not see defendant carrying a weapon.

Oliver testified as a witness for the State. She essentially corroborated the testimony of the other witnesses with some differences. According to Oliver, during the initial confrontation, Shelton said to defendant "I should have shot you when I had the chance." She did not see a gun on defendant or Shelton at that time. After the argument, defendant left the hallway. Oliver went to talk to defendant "to try to calm him down . . . because he seemed very upset . . . ." Defendant then warned Oliver not to be outside or to be ready.

Oliver testified that first she went up to Paige's apartment on the fifth floor, where they tried unsuccessfully to get Shelton a taxicab. She then went to the fourth floor, where she heard two shots. According to Oliver, she ran upstairs to the fifth floor where she saw Paige and his wife, Rashidah. Oliver told Rashidah that there was a problem downstairs. In turn, Rashidah told Paige and his brother.

In her earlier statement to the police she did not mention seeing Paige on the fifth floor. In fact, in her statement she reported that immediately after Shelton and defendant had the argument, she went upstairs, told Paige to go downstairs because defendant was going to shoot Shelton, and they ran downstairs and tried to get Shelton a cab. Moreover, in her statement Oliver stated that she looked out the window after she heard the shots and saw defendant

3

> leaving the building with his hands in his pockets. At trial, Oliver
> stated that she wasn't sure if she saw defendant outside because
> she was so high up.
>
> Defendant was arrested by the Orange County (New York) Police
> Department on December 29, 2000. Sergeant Shawn Harris
> testified that he had attempted to execute the arrest warrant a few
> times earlier that day at defendant's girlfriend's house. On his
> final attempt, Sergeant Harris procured the keys to the apartment
> from the housing and maintenance department and found defendant
> in a walk-in closet under a pile of clothes.

State v. Floyd, No. A-1986-02T4, slip op. at 2-5 (N.J. Super. Ct. App. Div., Nov. 10, 2004), cert.

denied, 182 N.J. 629 (2005) (table) (ECF Docket No. 18-7, at 3-6).

Petitioner appealed, and on November 10, 2004, the Appellate Division of the Superior

Court of New Jersey affirmed. See State v. Floyd, No. A-1986-02T4, slip op. at 2-5 (N.J. Super.

Ct. App. Div., Nov. 10, 2004). On February 16, 2005, the New Jersey Supreme Court denied

certification. See State v. Floyd, 182 N.J. 629 (2005) (table).

On May 26, 2005, Petitioner filed a petition for post-conviction relief in the Law

Division.[1] By order and opinion filed October 19, 2007, Law Division Judge Michael J. Nelson

denied post-conviction relief. (ECF Docket No. 19-7, at 2-8.) Petitioner appealed, and in an

opinion filed March 11, 2009, Superior Court, Appellate Division, affirmed the order denying

post-conviction relief. See State v. Floyd, No. A-3140-07T4 (N.J. Super. Ct. App. Div., Mar. 11,

2009), cert. denied, 200 N.J. 208 (2009) (table). On July 20, 2009, the New Jersey Supreme

Court denied certification. See State v. Floyd, 200 N.J. 208 (2009) (table).

---

[1] Respondents admit in the Answer Petitioner's assertion that he filed his first post-
conviction relief petition on May 26, 2005, even though the petition is date-stamped as received
on August 13, 2005, in Criminal Records.

The Clerk received Petitioner's original (undated) § 2254 Petition on October 20, 2009.

In response to this Court's Order, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on

August 15, 2010, Petitioner filed an Amended § 2254 Petition. The Petitioner raises the

following eleven claims, which have been taken directly from the Amended Petition:

> Ground One: THE STATE COURT'S RULING THAT THE
> TRIAL JUDGE'S PROPERLY DENIED DEFENDANT'S
> MOTION FOR A NEW TRIAL BECAUSE THE JURY'S
> VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE
> AND WAS A MANIFEST DENIAL OF JUSTICE UNDER THE
> LAW AND WAS CONTRARY TO CLEARLY ESTABLISHED
> FEDERAL LAW AND WAS AN UNREASONABLE
> DETERMINATION OF THE FACTS IN LIGHT OF THE
> EVIDENCE PRESENTED THEREFORE THE WRIT SHOULD
> ISSUE.
>
> Ground Two: THE STATE COURT'S RULING THAT THE
> PETITIONER WAS NOT DEPRIVED OF DUE PROCESS
> WHEN THE TRIAL JUDGE PERMITTED TO HAVE SHONDA
> OLIVER'S PRIOR STATEMENT TO POLICE WAS NOT
> ERROR BUT WAS CONTRARY TO CLEARLY
> ESTABLISHED FEDERAL LAW AND WAS AN
> UNREASONABLE DETERMINATION OF THE FACTS IN
> LIGHT OF THE EVIDENCE PRESENTED THEREFORE THE
> WRIT SHOULD ISSUE.
>
> Ground Three: THE STATE COURT'S RULING THAT THE
> PETITIONER WAS NOT DEPRIVED OF HIS DUE PROCESS
> RIGHT TO A FAIR TRIAL WHEN THE PROSECUTOR
> COMMITTED MISCONDUCT IN HER OPENING
> STATEMENT WHEN SHE INVITED UNDUE SYMPATHY
> FOR THE VICTIM AND THE VICTIM'S FAMILY BY
> TELLING THE JURY THAT "WHEN I WAS ASKED TO
> PROSECUTE THIS CASE ON BEHALF OF THE STATE, I
> REMEMBER GOING THROUGH THE FILE AND SEEING
> THE NAME OF THE VICTIM IN THE CASE, GREGORY
> SHELTON, JR. HOW PROUD HIS FATHER MUST HAVE
> BEEN WHEN HIS SON WAS BORN THAT HE GAVE HIM HIS
> NAME" ALSO WHEN SHE STATED THAT "I WOULD LOVE
> TO TELL YOU THAT WHEN THE SHOOTING OCCURRED
> THAT A BUS FULL OF NUNS JUST HAPPENED TO BE

DRIVING BY AND THEY WITNESSED THE WHOLE THING. BUT THAT DIDN'T HAPPEN HERE. THIS HAPPENED AT 11 O'CLOCK AT NIGHT IN THE PROJECTS, NOT IN SHORT HILLS MALL, IT HAPPEN[ED] IN THE PROJECTS. AND THAT'S WHO WAS OUT THERE. AND, LADIES AND GENTLEMEN, THE FACT THAT THEY HAVE CRIMINAL RECORDS, WELL, SO WHAT DOES THAT MEAN, THEY CAN'T WITNESS A MURDER? AND I SUBMIT TO YOU THE FACT THAT THEY CAME FORWARD AND THEY COOPERATED WITH THE POLICE DESPITE THEIR OWN INVOLVEMENT WITH THE LAW, MAKES THEM EVEN MORE CREDIBLE." WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE.

Ground Four: THE STATE COURT'S RULING THAT THE TRIAL JUDGE WAS CORRECT IN DENYING DEFENDANT'S PRE-TRIAL MOTION FOR WITHDRAWAL AND/OR REASSIGNMENT OF HIS TRIAL COUNSEL DEPRIVED PETITIONER OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND THEREFORE THE WRIT SHOULD ISSUE.

Ground Five: THE STATE COURT'S RULING THAT THE PETITIONER WAS NOT DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL BECAUSE THE JURY'S VERDICT AS REFLECTED IN THEIR VERDICT SHEET, WAS AMBIGUOUS AND CAN NOT BE SUSTAINED WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND WAS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED THEREFORE THE WRIT SHOULD ISSUE.

Ground Six: THE STATE COURT'S RULING THAT THE T[R]IAL JUDGE DID NOT ERR IN PERMITTING THE STATE TO INTRODUCE INTO EVIDENCE THE VICTIM'S FRAGMENTED BELT BUCKLE AND PHOTOGRAPHS OF THE VICTIM'S BLOODY PANTS WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE.

Ground Seven: THE STATE COURT'S RULING THAT THE TRIAL JUDGE DID NOT ERR BY PERMITTING DENNIS

6

HULTAY TO TESTIFY AS AN EXPERT WITNESS WAS
CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW
AND WAS AN UNREASONABLE DETERMINATION OF THE
FACTS IN LIGHT OF THE EVIDENCE PRESENTED
THEREFORE THE WRIT SHOULD ISSUE.

Ground Eight:  THE STATE COURT'S RULING THAT THE
TRIAL JUDGE DID NOT ERR WHEN INSTRUCTING THE
JURY ON A FLIGHT CHARGE IS CONTRARY TO AND
INVOLVES AN UNREASONABLE APPLICATION OF
CLEARLY ESTABLISHED FEDERAL STANDARDS, AND IS
BASED ON AN UNREASONABLE DETERMINATION OF
THE FACTS.

Ground Nine:  THE STATE COURT'S RULING THAT TRIAL
COUNSEL WAS NOT CUMULATIVELY INEFFECTIVE IS
CONTRARY TO AND INVOLVES AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL
STANDARDS, AND IS BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS.

Ground Ten:  THE STATE COURT'S RULING THAT
APPELLATE COUNSEL WAS NOT INEFFECTIVE IS
CONTRARY TO AND INVOLVES AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL
STANDARDS, AND IS BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS.

Ground Eleven:  THE STATE COURT'S RULING THAT AN
EVIDENTIARY HEARING WAS NOT NECESSARY IS
CONTRARY TO AND INVOLVES AN UNREASONABLE
APPLICATION OF CLEARLY ESTABLISHED FEDERAL
STANDARDS, AND IS BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS.[2]

(ECF Docket No. 4, at 22, 26, 30, 32, 34, 36, 37, 39, 40, 42, 43.)

Respondents filed an Answer and a copy of the state court record.  Although given an

opportunity to do so, Petitioner did not file a Reply to the Answer.

_____

[2] The denial of an evidentiary hearing by a state court on post-conviction relief does not
state a federal constitutional claim.  Therefore, this Court lacks jurisdiction over this claim.  See
infra note 3.

## II. STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested. See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[3]

---

[3] "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction). Nor may the court recharacterize a ground asserted under state law into a federal constitutional claim. See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners

(continued...)

The AEDPA further limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), rev'd on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim in an order unaccompanied by an opinion explaining the reasons relief has been denied. See Harrington v. Richter, 131 S. Ct. 770, 784 (2011) ("a state court need not cite or even be aware of [Supreme Court] cases . . . . Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated") (citations omitted). Alternatively, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed

---

[3](...continued)

simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85.[4]

If a claim has been adjudicated on the merits in state court proceedings, § 2254(d) limits habeas relief as follows:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000) . A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

---

[4] The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely. See Harrington, 131 S. Ct. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. However, under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Harrington, 131 S. Ct. at 785 (quoting Williams, 529 U.S. at 410).[5] As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision . . . . Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

Harrington, 131 S. Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S. Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden

---

[5] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

11

of proof, and review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Id.

## III. **DISCUSSION**

A.  Due Process - Sufficiency of the Evidence

In Ground One, Petitioner claims that, because the jury's verdict was against the weight of the evidence, the trial judge violated due process by denying his motion for a new trial.  As factual support, Petitioner states:

> There was no physical evidence that supported the State's theory that defendant was the perpetrator.  Although the State presented numerous witnesses to an alleged argument between defendant and the victim some time before the shooting occurred, only one witness claimed to have actually seen defendant shoot the victim.
>
> The credibility of that witness, Duane Paige, moreover, was virtually non-existent and his testimony was contradicted by testimony from another State's witness.  Although Paige testified that he was on the first floor and observed defendant shoot the victim, Paige's ability to have accurately observe[d] the shooting on the night in question[] was suspect.  In fact, Paige acknowledged that he had sniffed heroin only two hours before the incident in question . . . .  Paige acknowledged that he had multiple burglary convictions in addition to other offenses.  Paige was incarcerated at the time of the trial.  Even more significantly, Paige's primary testimony - that he had observed defendant shoot the victim on the first floor - was completely contradicted by Shonda Oliver, another State witness.  Oliver testified that <u>after</u> hearing the shot, she ran to the fifth floor "where Duane [Paige] and Tate [another cousin of the victim] were. "
>
> *           *           *
>
> Oliver also cast doubt on her earlier statement that after she heard the gunshots, she looked out the fourth-floor window of the Mechanic Street building and saw defendant walking out.  Oliver

12

> indicated in the trial court below that there was, in fact "another guy that does live around the project . . . that looks just like [defendant.]"
>
> \*                    \*                    \*
>
> In short, because Duane Paige's unreliable and contradicted testimony is the primary basis upon which defendant's conviction rests, the trial court should have vacated defendant's conviction and sentence as clearly against the weight of the evidence and a manifest denial of justice.

(ECF Docket No. 4, at 22-25.)

Petitioner presented Ground One on direct appeal.  The Appellate Division rejected the claim as follows:

> Defendant argues that there was no physical evidence that supported the State's theory that he was the person who shot Shelton.  Moreover, Duane Paige's testimony was unreliable and contradictory.  Therefore, he contends that the conviction is against the weight of the evidence, and the trial judge should have granted his motion for a new trial.  We disagree.
>
> \*                    \*                    \*
>
> While the weapon was not retrieved, the testimony of the eyewitnesses to the initial encounter between the victim and defendant and the testimony of Paige, an eyewitness to the shooting, fully support the verdict of guilty.  It was the function of the jury to evaluate the credibility of the various witnesses.  There is nothing in the testimony of the various witnesses that was so unworthy of belief that the jury's acceptance of their testimony must be seen as a manifest denial of justice.  Stated differently, a reasonable jury could have found defendant guilty.  Thus, defendant's motion for a new trial was properly denied.

(ECF Docket No. 18-7, at 7-9.)

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318 (1979). "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324; accord McDaniel v. Brown, 130 S. Ct. 665, 666 (2010) (per curiam). When assessing a sufficiency of the evidence claim in a § 2254 petition, the sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. Jackson "requires a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" McDaniel, 130 S. Ct. at 673 (quoting Jackson, 443 U.S. at 326); see also House v. Bell, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict."). The Court emphasized that "the standard . . . does not permit a court to make its own subjective determination of guilt or innocence." Jackson at 320, n. 13. Moreover, "a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously." McDaniel, 130 S. Ct. at 672 (citation and internal quotation marks omitted).

14

"[U]nder <u>Jackson</u>, the assessment of credibility of witnesses is generally beyond the scope of review." <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995). The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" <u>Kamienski v. Hendricks</u>, No. 06-4536, 2009 WL 1477235, at *7 (3d Cir. May 28, 2009).

In this case, the New Jersey courts rejected Petitioner's sufficiency of the evidence claim because, if the jury believed the testimony of Duane Paige, it could have found Petitioner guilty beyond a reasonable doubt. This is precisely the standard under <u>Jackson v. Virginia</u>. Thus, the New Jersey courts' adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of <u>Jackson</u> and its progeny, and Petitioner is not entitled to habeas relief on Ground One.

B. <u>Due Process - Admission of Evidence</u>

In Grounds Two, Six, and Seven, Petitioner asserts that the admission of Shonda Oliver's prior statement (Ground Two), the admission of the victim's belt buckle and photographs of his bloody pants (Ground Six), and the admission of the testimony of Dennis Hultay as an expert (Ground Seven), violated his due process rights.

In Ground Two, Petitioner argues that the admission of Shonda Oliver's prior statement to the police (which contradicted her trial testimony) violated clearly established federal law. Petitioner's factual support for Ground Two does not discuss admission of the prior statement, but repeats the factual support Petitioner provided for Ground One. (ECF Docket No. 4, at 26.) However, this Court has reviewed Petitioner's brief filed on direct appeal, wherein he argued

15

that the trial judge violated New Jersey Rule of Evidence 803 in admitting the prior inconsistent

statement of Oliver. (ECF Docket No.18-5, at 21-27.) The Appellate Division rejected the claim

as follows, finding that the evidence was appropriately admitted under Evidence Rule 803:

> Defendant also argues that Shonda Oliver's prior statement to the
> police was improperly admitted as substantive evidence.
> Defendant argues that the trial judge misapplied the law. We
> disagree.
>
> At trial, Shonda Oliver testified that she ran to the fifth floor
> apartment of Rashidah and Duane Paige after she heard the
> gunshot to tell them of the shooting. In a statement given to the
> police approximately three weeks after the shooting, she stated that
> she ran to the Paige apartment but spoke only to Rashidah. The
> presence of Duane Paige in the apartment when Oliver reported the
> shooting contradicts Paige's testimony that he witnessed the
> shooting. Furthermore, Oliver related in her statement that she saw
> defendant walk out of the building after the shooting. At trial, she
> testified that she was not sure that it was defendant who she saw
> leaving the building.
>
> Following a hearing out of the presence of the jury, Judge Nelson
> held that the January 8, 2001 statement by Oliver was admissible.
> Defendant contends that the out-of-court statement and Oliver's
> trial testimony were not inconsistent and the original statement was
> unreliable.
>
> The admission of prior inconsistent statements as substantive
> evidence is governed by N.J.R.E. 803(a)(1) . . . .
>
> The statement was properly admitted under N.J.R.E. 803(a)(1)
> because it was inconsistent with her trial testimony and exhibited
> indicia of reliability. As noted, at trial Oliver placed Duane Paige
> in his apartment immediately after the shooting rather than on the
> first floor and expressed uncertainty about the identity of the man
> leaving the building.
>
> Moreover, several factors suggest reliability: Oliver had no
> interest in the outcome of the trial; the statement was given to the

police; Oliver's physical and mental condition were unremarkable; none of Oliver's testimony sought to exculpate herself; the statement contains the interview in its entirety; there was not inducement or coercion for making the statement; the anticipated use of the statement was apparent or made known to Oliver; Oliver's statement was inherently believable; and the witnesses corroborated the prior statement rather than her in-court testimony. To be sure, Oliver was incarcerated on January 8, 2001; however, her custodial status when the statement was given does not render the statement inherently unreliable. She signed the document which stated that the statement was not coerced and that she did not receive anything for her testimony. She also was not a suspect in Shelton's murder. Oliver was also afforded an opportunity to explain or deny the statement, and defendant was afforded an opportunity to interrogate her on the statement. Finally, the trial judge provided an instruction to the jury on its use of the prior inconsistent statement and her trial testimony.

(ECF Docket No.18-7, at 9-12.)

In Ground Six, Petitioner argues that the admission of the victim's fragmented belt buckle and a photograph of his bloody pants violated due process. As factual support, Petitioner states that this "evidence was relevant only to the victim's cause and manner of death which was not disputed in the trial court []. Any relevance was 'merely cumulative' to the substantial testimony of the various witnesses presented by the State on that matter, including the medical examiner and the police in the scene, and they were relevant only to a matter that defendant did not dispute at trial." (ECF Docket No. 4, at 36.) Petitioner also presented this ground to the Appellate Division on direct appeal. The Appellate Division summarily rejected the claim.

In Ground Seven, Petitioner argues that the admission of the testimony of Dennis Hultay as an expert in firearms ammunition, identification and testing, violated due process. As factual support, Petitioner states:

17

> Although Hultay appeared to be sufficiently qualified as an expert, his testimony was only marginally helpful to the jury on any relevant issue.
>
> In fact, it was so vague and non-specific with regard to the crime actually committed that it had the clear capacity to confuse the issues in the case. Hultay simply opined that the fragments recovered from the victim were either two nine millimeter bullets or one [forty]-caliber bullet, and that a Smith & Wesson [forty] caliber handgun could have fired the bullet. In light of the fact that the weapon used was not introduced into evidence by the State, however, and no other physical evidence was introduced to link defendant to the offense, Hultay's opinion had, at most, limited provocative value. Moreover, its admission created a substantial danger of undue prejudice to defendant because, being an expert opinion, it necessarily bolstered the State's theory of the case and, once again, focused the jury's attention on the unnecessary details of the cause and manner of death of the victim rather than on the actual issue of whether defendant was, in fact, responsible for the crime.

(ECF Docket No. 4, at 37-38) (citations to record omitted).

Petitioner raised Ground Seven on direct appeal. The Appellate Division rejected the claim on the ground that "the testimony of the firearms expert was not irrelevant or unduly prejudicial." (ECF Docket No. 18-7, at 15.)

The Supreme Court has held that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). The admissibility of evidence is generally a question of state law which is not cognizable under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence").

18

In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court held that the state court's admission in petitioner's trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) did not violate due process because the evidence was relevant to intent:

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point. Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial. We hold that McGuire's due process rights were not violated by the admission of the evidence.

Id. at p. 70.

To be sure, the United States Court of Appeals for the Third Circuit has held that the admission of evidence may violate due process where the evidence "undermine[d] the fundamental fairness of the entire trial." Keller v. Larkins, 251 F. 3d 408, 413 (3d Cir. 2001); see also Lesko v. Owens, 881 F. 2d 44, 51 (3d Cir. 1989) ("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation"); Bisaccia v. Attorney General, 623 F. 2d 307, 313 (3d Cir. 1980) (when "the probative value of . . . evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law"). However, this Court is not aware of any Supreme Court case clearly establishing that the admission of a prior inconsistent statement, photograph of

the victim's bloody pants and shattered belt buckle, and the testimony of a weapons expert, violates due process. Moreover, Supreme Court precedent suggests the contrary. See, e.g., Estelle, 502 U.S. at 70 (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction). Because the admission of Oliver's prior inconsistent statement, the victim's belt buckle and photographs of his bloody pants, and the testimony of Dennis Hultay, was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief on Grounds Two, Six and Seven.

## C.  Due Process - Prosecutorial Misconduct

In Ground Three, Petitioner asserts that the opening statement of the prosecutor violated due process because she

> invited undue sympathy for the victim and the victim's family by telling the jury that "when I was asked to prosecute this case on behalf of the state, I remember going through the file and seeing the name of the victim in the case, Gregory Shelton, Jr. How proud his father must have been when his son was born that he gave him his name." Also when she stated that [this] "happened in the projects. And that's who was out there, and . . . the fact that they have criminal records, well, so what does that mean, they can't witness a murder?''

(ECF Docket No. 4, at 30.)

The Appellate Division rejected this claim on direct appeal as follows:

> Defendant also argues that he is entitled to a new trial due to two improper statements by the prosecutor in her opening statement. We are satisfied that neither statement, considered singly or in combination, deprived defendant of a fair trial.

20

In her opening, the prosecutor referred to the victim and commented how proud his father must have been of him at his birth because he gave his son his name. Defendant contends that this statement evoked undue sympathy for the victim and his family.

The prosecutor also commented about the State's witnesses. She mentioned that the men and women who would be called by the State were residents of the "projects" and the shooting occurred in the "projects" rather than at the Short Hills Mall. She also mentioned hat some of the State's witnesses had criminal records; nevertheless, they came forward to assist the prosecution. Defendant argues that the prosecutor impermissibly vouched for the credibility of her witnesses.

\*                    \*                    \*

To warrant a new trial, the prosecutor's conduct must have been so egregious as to deprive a defendant of a fair trial. To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense. In determining whether a prosecutor's actions were sufficiently egregious to warrant the reversal of a conviction, a reviewing court should take into account: (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them. To determine whether the prosecutor's comments were inappropriate, the court must also: (1) inquire whether the prosecutor's legal or factual assertions were accurate; and (2) inquire whether the comments were confined to the evidence revealed during the trial and reasonable inferences to be drawn from that evidence. If no objection was made to the remarks, they are generally considered not prejudicial.

Here, the prosecutor's conduct did not deprive defendant of his right to a fair trial. Defendant's failure to object to any statements made during opening indicates that defense counsel did not believe the remarks were prejudicial. The fact that defendant was named for his father is obvious and could not inflame the jury. The

21

> State's comments about its witnesses reflected their anticipated testimony.  Moreover, the prosecutor advised the jurors that they would have the opportunity to hear the testimony and evaluate the testimony of each witness.

State v. Floyd, No. A-1986-02T4 (ECF Docket No.18-7, at 12-14) (citations and internal quotation marks omitted).

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them."  Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.  Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 255 F.3d 95, 111 (3d Cir. 2001).

The New Jersey courts ruled that the comments Petitioner challenges did not infect the entire trial with unfairness as to make the resulting conviction a denial of due process.  This is the standard required by Donnelly, 416 U.S. at 643.  Thus, the New Jersey courts' adjudication of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas relief under Ground Three.

D.  Due Process - Ambiguous Verdict Sheet

In Ground Five, Petitioner argues that the jury

> announced that defendant was not guilty of murder, not guilty of passion/provocation manslaughter, but guilty of aggravated manslaughter.  That apparent verdict, however, does not match the

> verdict sheet.  Although the jury checked "guilty" for aggravated
> manslaughter, it also checked "guilty" for reckless manslaughter a
> lesser offense.  That inconsistency, moreover, was never clarified
> by the trial court, which simply stopped asking for the jury's
> verdict under count one once the jury answered "guilty" to
> aggravated manslaughter.  Defendant's conviction for aggravated
> manslaughter, therefore, is based on an ambiguous jury finding and
> cannot be sustained as a matter of law . . . .  Because the verdict
> sheet is ambiguous and was not clarified by the trial court below
> when the jury announced its verdict, there is no certainty a
> conviction for aggravated manslaughter was based on the jury's
> determination that the State proved all three (3) required elements
> (rather than just the two (2) required for reckless manslaughter)
> beyond a reasonable doubt.
>
> Second, defendant's conviction cannot stand because the verdict
> sheet incorrectly identified the elements intended as "reckless
> manslaughter" as "aggravated manslaughter," thereby effectively
> depriving defendant of a clear and correct verdict sheet that
> contained the lesser included offense that defendant was entitled to
> have submitted to the jury.

(ECF Docket No. 4, at 34-35) (citations omitted).

This Court was not able to locate any Supreme Court decision holding that an ambiguity

in the verdict sheet violates due process.  Moreover, Supreme Court precedent suggests the

contrary.  For example, in Harris v. Rivera, 454 U.S. 339, 344 (1981), the Supreme Court held

that facially inconsistent verdicts in a bench trial do not violate due process because, "even if the

acquittal rests on an improper ground, that error would not create a constitutional defect in a

guilty verdict that is supported by sufficient evidence and is the product of a fair trial."  See also

United States v. Powell, 469 U.S. 57, 64-65 (1984) ("where truly inconsistent verdicts have been

reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the

conviction the jury did not speak their real conclusions, but that does not show that they were not

convinced of the defendant's guilt'") (quoting Dunn v. United States, 284 U.S. 390, 393 (1932)).

23

The Appellate Division rejected this claim summarily, but noted that "[t]he oral jury instructions accurately reflected the law governing the charges." (ECF Docket No. 18-7, at 15.) This Court has reviewed the verdict sheet. (ECF Docket No. 18-2, at 2-5.) The verdict sheet shows first that the jury found Petitioner not guilty of murder in count one. Id. Next, also on count one, the verdict sheet shows that the jury found Petitioner not guilty of passion/provocation manslaughter. Next, also with respect to count one, the verdict sheet asks if the defendant is guilty of aggravated manslaughter because the state has proved beyond a reasonable doubt that defendant caused Gregory Shelton's death, and he did so recklessly, and he did so under circumstances manifesting extreme indifference to human life; the jury checked "guilty." The verdict sheet then states: "If Guilty go to Count 2, If Not Guilty of Aggravated Manslaughter go to Reckless Manslaughter." (Id. at p. 3.) Next, also with respect to count one, the verdict sheet mistakenly asks if the defendant is guilty of aggravated (when it should state "reckless") manslaughter because the State has proved beyond a reasonable doubt that defendant caused Gregory Shelton's death, and he did so recklessly; the jury checked "guilty." Although the verdict sheet defines aggravated manslaughter with three elements in one paragraph on count one, and in the next paragraph on count one mistakenly defines "aggravated" manslaughter with only the first two of the same three elements, it is obvious from the face of the verdict sheet that the jury intended to find Petitioner guilty of aggravated manslaughter, as defined by the three elements set forth in the first aggravated manslaughter instruction. The Appellate Division noted that the oral jury instructions accurately defined each offense charged. Presumably, after hearing the instructions, which properly defined aggravated manslaughter with three elements, and defined reckless manslaughter (a lesser included offense) with two of the same three element, the

jury realized the mistake on the verdict sheet (defining aggravated manslaughter twice, when the second definition was for reckless manslaughter).

This Court finds that Petitioner is not entitled to habeas relief on Ground Five because the New Jersey courts' rejection of Petitioner's ambiguity in the verdict sheet claim was not contrary to or an unreasonable application of Supreme Court precedent. Nor was it based on an unreasonable determination of the facts.

E.  Due Process - Flight Instruction

In Ground Eight, Petitioner asserts that the trial court violated due process by instructing the jury on flight. As factual support, Petitioner states:

> [T]he State introduced no evidence that the police informed defendant no[t] to leave town. The testimony that defendant walked out of the Mechanic Street project after the offense cannot be used as evidence of flight because that was part of the same chain of events upon which the State's charges were based. This was not a case where defendant was charged with a crime and subsequently fled in order to avoid known criminal charges. There were no circumstances present and unexplained which, in conjunction with the leaving, reasonably justif[ied] an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt.

(ECF Docket No. 4, at 39.)

The government argues that this ground involves state law and does not implicate the Constitution and, to the extent that the giving of a flight instruction raises a constitutional claim, the challenged flight instruction did not deprive Petitioner of due process.

The Appellate Division rejected this claim without comment on direct appeal. This Court has, however, reviewed the record. The challenged instruction follows:

25

> In this case there's an indication of flight, which I am going to
> explain to you at this point.  There has been some testimony in the
> case from which you may draw, or you may infer that the
> defendant fled after the alleged commission of the crime.  The
> defense and defendant deny any flight in this particular case.  The
> question of whether the defendant fled after the commission of a
> crime is another question of fact for you to determine.  Mere
> departure from a place where a crime has been committed does not
> constitute flight.  If you find that the defendant, fearing that an
> accusation or arrest will be made against him on the charges
> involved in the indictment, took refuge in flight for the purpose of
> evading the accusation or arrest on the charges, then you may
> consider such flight in connection with all other evidence in the
> case, as an indication or proof of consciousness of guilt.  Flight
> may be considered as consciousness of guilt if you determine that
> the defendant's purpose in leaving was to evade accusation or
> arrest for the offense charged in the indictment before you.

(ECF Docket No. 17-2, at 12.)

The record does contain an indication of flight.  The facts recited by the Appellate

Division indicate that, after issuance of an arrest warrant, Petitioner was arrested at his

girlfriend's house in Orange County, New York, while hiding in a closet.  "Sergeant Harris

procured the keys to the apartment from the housing and maintenance department and found

defendant in a walk-in closet under a pile of clothes."  (ECF Docket No. 18-7, at 6.)

As stated above, in Estelle v. McGuire, 502 U.S. 62, 72 (1991), McGuire sought habeas

relief from his state conviction for murdering his infant daughter.  He claimed that an instruction

regarding the testimony of two physicians that the child had suffered child abuse (evidence of

rectal tearing that was six weeks old and rib fractures that were seven weeks old) violated due

process.  Specifically, McGuire focused on the portion of the instruction explaining to the jury

that the prior injury evidence "was received and may be considered by you only for the limited

purpose of determining if it tends to show . . . a clear connection between the other two

26

offense[s] and the one of which the Defendant is accused, so that it may be logically concluded that if the Defendant committed other offenses, he also committed the crime charged in this case." Id. at 71.  The Supreme Court rejected the due process challenge to this instruction:

> McGuire argues that, despite the lack of any direct evidence linking him to those injuries, the instruction directed the jury to find that he had committed them. This claim is clearly foreclosed, however, by the language of the instruction. The challenged portion of the instruction included the words "if the Defendant committed other offenses." App. 41. By including this phrase, the trial court unquestionably left it to the jury to determine whether McGuire committed the prior acts; only if the jury believed he was the perpetrator could it use the evidence in deciding whether McGuire was guilty of the crime charged. Therefore, if the jury did not believe McGuire caused the prior injuries, he was not harmed by the challenged portion of the instruction. To the extent that the jury may have believed McGuire committed the prior acts and used that as a factor in its deliberation, we observe that there was sufficient evidence to sustain such a jury finding by a preponderance of the evidence . . . . The proof of battered child syndrome itself narrowed the group of possible perpetrators to McGuire and his wife, because they were the only two people regularly caring for Tori during her short life.

Estelle, 502 U.S. at 73-74.

In Waddington v. Sauausad, 129 S. Ct. 823 (2009), the Supreme Court rejected a habeas petitioner's claim that an accomplice liability instruction was ambiguous in violation of due process because the instruction confused the jury with regard to the elements required to find the petitioner guilty as an accomplice.  The Court summarized the law regarding the constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable

> likelihood'" that the jury applied the instruction in a way that
> [violated due process]. <u>Estelle</u>, <u>supra</u>, at 72, 112 S.Ct. 475 (quoting
> <u>Boyde v. California</u>, 494 U.S. 370, 380 . . . (1990)). In making this
> determination, the jury instruction "may not be judged in artificial
> isolation,' but must be considered in the context of the instructions
> as a whole and the trial record." <u>Estelle</u>, <u>supra</u>, at 72. Because it is
> not enough that there is some "slight possibility" that the jury
> misapplied the instruction, <u>Weeks v. Angelone</u>, 528 U.S. 225, 236
> . . . (2000), the pertinent question "is 'whether the ailing instruction
> by itself so infected the entire trial that the resulting conviction
> violates due process,' " <u>Estelle</u>, <u>supra</u>, at 72, 112 S.Ct. 475
> (quoting <u>Cupp</u>, <u>supra</u>, at 147, 94 S.Ct. 396).

<u>Waddington</u>, 129 S.Ct. at 831 -832 (2009) (citations and internal quotation marks omitted).

The United States Court of Appeals for the Third Circuit has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." <u>Id</u>. As the Third Circuit explained,

> In considering whether this case involves a claim of error under
> the Constitution, laws, or treaties of the United States, it is critical
> to remember that the Supreme Court has made it clear that the
> states define the elements of state offenses. Accordingly, while
> there may be constitutionally required minimum criteria which
> must be met for conduct to constitute a state criminal offense, in
> general there is no constitutional reason why a state offense must
> include particular elements. *See McMillan v. Pennsylvania,* 477
> U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).
>
> It thus follows that for the error of state law in the justification
> instructions, assuming that there was an error, to be meaningful in
> this federal habeas corpus action, there would have to be a body of
> federal law justifying the use of deadly force which is applicable in

a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

In this case, as in Estelle, Petitioner's claim is clearly foreclosed by the language of the instruction, which asks the jury to factually determine whether or not Petitioner fled to avoid prosecution. Petitioner is not entitled to habeas relief on Ground Eight because he has not shown that the flight instruction relieved the state of the necessity of proving an element of the offense as required by federal law or deprived Petitioner of a defense the state had to afford him under federal law. And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72; see also Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief"). Because Petitioner has not shown that the state courts' adjudication of his claim challenging the flight instruction was contrary to, or an unreasonable application of Supreme Court precedent, he is not entitled to habeas relief on this ground.

F. Sixth Amendment Right to Counsel of Choice

Petitioner argues in Ground Four that the trial court violated the Sixth Amendment by denying his pretrial motion for reassignment of appointed counsel. As factual support, Petitioner states:

> [S]everal months before defendant's trial began - defendant filed a motion for the withdrawal and/or reassignment of his trial counsel. In support of his motion, defendant contended that his trial counsel "has not spoken with me about the facts of my legal standings or the circumstances of my position in a truthful manner."

> During the January 3, 2002 hearing on defendant's motion, defendant requested a different assigned counsel and advised the trial court that although he had been indicted for nearly one year, he had not received all of the discovery possessed by his attorney . . . . In addition, defendant advised the trial court that he also had received some "exculpatory evidence" but his trial counsel had not responded to him regarding those matters . . . .

> [D]efendant complained to the trial court about his counsel's preparation more than six (6) months before the trial began and specifically asked for a reassignment of his counsel. Nevertheless, the trial court refused to do so . . . .

> Indeed, defendant's complaint that his counsel had failed to communicate with him about his defense to the State's charge and had failed to provide him with all of the State's discovery contravenes the most basic of defense counsel's duties. New Jersey courts have consistently emphasized that effective representation starts with an adequate investigation of the State's case and the potential defense to it.

(ECF Docket No. 4, at 32-33) (citations omitted).

Petitioner presented Ground Four to the Appellate Division on direct appeal. The Appellate Division rejected the claim as follows:

> Defendant contends that the trial judge improperly denied his motion for a reassignment of counsel, thereby denying his

> constitutional right to counsel.  We are satisfied that defendant was
> not denied his right to counsel.  Defendant was assigned counsel;
> he did not have the right to pick and choose among the counsel
> employed by the Office of the Public Defender.  State v. Coon, 314
> N.J. Super. 426, 438 (App. Div. 1998).  Moreover, at the
> conclusion of the proceeding in which defendant aired his
> displeasure with assigned counsel, it is apparent that this issue was
> resolved in defendant's favor.

(ECF Docket No. 4, at 14-15.)

The Sixth Amendment right to counsel encompasses both a right to adequate

representation and a right to choose one's own counsel.  See Powell v. Alabama, 287 U.S. 45, 53

(1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should

be afforded a fair opportunity to secure counsel of his own choice."); Daniels v. Lafler, 501 F. 3d

735, 738 (7th Cir. 2007).  In Powell v. Alabama, 287 U.S. at 53, the Supreme Court stated that a

criminal defendant who retains an attorney has the right to select that attorney.  In United States

v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006), the Supreme Court observed that an element of

the Sixth Amendment right "is the right of a defendant who does not require appointed counsel to

choose who will represent him."  In dicta, the Court opined that the Sixth Amendment "right to

counsel of choice does not extend to defendants who require counsel to be appointed for them."

Id.; accord Montejo v. Louisiana, 129 S. Ct. 2079, 2084 (2009) ("An indigent defendant has no

right to choose his counsel."); Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989)

("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so

long as they are adequately represented by attorneys appointed by the courts.").

Because no Supreme Court holds that an indigent defendant who is represented by

appointed counsel has a federal constitutional right to counsel of his choosing, the New Jersey

courts' rejection of Petitioner's Sixth Amendment claim was not contrary to or an unreasonable application of Supreme Court holdings. See United States v. Van Anh, 523 F. 3d 43, 48 n.3 (1st Cir. 2008) ("Although indigent defendants have the right to appointed counsel, they have neither the right to be represented by counsel of their choosing, nor the right to demand different counsel except for good cause.") (citations omitted); Daniels v. Lafler, 501 F. 3d 735, 739 (6th Cir. 2007) (denying § 2254 petitioner's claim that he was denied the right to counsel of his choice because "Daniels, an indigent defendant forced to rely on court-appointed counsel, has no choice-of-counsel right").

G.  Sixth Amendment Right to Effective Assistance of Counsel

Petitioner raises ineffective assistance of counsel claims in Grounds Nine (ineffective assistance of trial counsel), and Ten (ineffective assistance of appellate counsel). The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine

32

whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

### 1. **Effectiveness of Petitioner's Trial Counsel**

In Ground Nine, Plaintiff asserts that "THE STATE COURT'S RULING THAT TRIAL COUNSEL WAS NOT CUMULATIVELY INEFFECTIVE IS CONTRARY TO AND

INVOLVES AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED

FEDERAL STANDARDS, AND IS BASED ON AN UNREASONABLE DETERMINATION

OF THE FACTS." (ECF Docket No. 4, at 40.) As factual support, he asserts:

> Trial counsel's cumulative deficiencies were not strategic choices, and the outcome of the proceedings would likely have been different, but for trial counsel's actions and omissions.

> In his petition for [Post Conviction Relief] (PCR), Petitioner claimed that trial counsel had been cumulatively ineffective in failing to adequately preserve the record on the prosecutor excluding jurors on the basis of race. The trial transcripts reveal that seven out of eight peremptory challenges were used on black jurors, and the eighth challenge was used on a Hispanic juror. Had counsel been effective, a full voir dire record would have been created. Trial counsel additionally failed to object to the submission of an unclear verdict sheet that did not contain lesser-included offenses. Trial counsel also neglected to object to various inappropriate comments made by the State during opening and closing statements. Trial counsel failed to request appropriate charges to the jury, including a charge on the prior inconsistent statements of state witness Shonda Oliver. Trial counsel failed to ensure that Petitioner was given full discovery in order to make informed decisions, and counsel neglected to sufficiently investigate and to present an expert witness. Trial counsel also made objections that were not fathomable, and counsel neglected to effectively object to various issues and adequately subject the state's case to meaningful adversarial testing. Trial counsel also neglected to call a witness who would have presented Petitioner's version of the events, and then prevented Petitioner from offering his version of events.

> Trial counsel's collective shortcomings were listed under cumulative error and should be considered under such in this petition.

(ECF Docket No. 4, at 40-41.)

The Appellate Division rejected this claim on direct appeal as follows:

34

> Defendant also has done nothing other than to allege that the prosecutor impermissibly struck qualified jurors based on their race. To support such a claim, defendant must analyze the reasons expressed to strike jurors and examine the composition of the jury that rendered the verdict. He has not done so. A prima facie case of ineffective assistance of counsel is established by facts not speculation.

(ECF Docket No. 20-4, at 10) (citations omitted).

First, Petitioner argues that counsel was deficient in failing to preserve the record on the prosecutor's use of peremptory challenges based on race, in that seven out of eight peremptory challenges were used to strike African-American people. This Court has reviewed the transcript, and defense counsel did object before the trial began to the state's race-based use of peremptory challenges, in that the state used seven out of eight peremptory challenges against African-American people. (ECF Docket No. 15-4.) The trial court reviewed each peremptory challenge used by the prosecution and by the defense, and decided that it was not necessary for the state to put reasons on the record for use of peremptories, since the panel, which originally included eight Caucasian people, now included five Caucasians, several African-Americans, and Asian and Hispanic jurors. Because counsel objected to the race-based use of peremptory challenges, counsel was not constitutionally ineffective in failing to preserve this issue for appeal.

Petitioner further argues that counsel was deficient in failing to object to the unclear verdict sheet, failing to object to the prosecutor's summation, failing to request appropriate jury charges, including a prior inconsistent statement charge, failing to ensure that Petitioner had full discovery, and failing to present an expert. This Court has already determined that the verdict sheet, the prosecutor's summation, and the use of Oliver's prior inconsistent statement, did not violate Petitioner's constitutional rights. As the Supreme Court explained in Knowles v.

Mirzayance, 129 S. Ct. 1411 (2009), counsel cannot be constitutionally deficient in failing to pursue a defense or claim that had almost no chance of success:

> [T]he state court's rejection of Mirzayance's ineffective-assistance-of-counsel claim [based on failure to present an insanity defense] was consistent with Strickland. The Court of Appeals insisted, however that reasonably effective assistance required here that counsel assert the only defense available. But we are aware of no "prevailing professional norms" that prevent counsel from recommending that a plea be withdrawn when it is almost certain to lose. See Strickland, supra, at 688 . . . . And in this case, counsel did not give up the only defense available. Counsel put on a defense to first-degree murder . . . . The law does not require counsel to raise every available nonfrivolous defense. See Jones v. Barnes, 463 U.S. 745, 751 (1983) . . . . Counsel also is not required to have a tactical reason-above and beyond a reasonable appraisal of a claim's dismal prospects for success- for recommending that a weak claim be dropped altogether. Mirzayance has thus failed to demonstrate that his counsel's performance was deficient.

Knowles v. Mirzayance, 129 S. Ct. at 1421-22 (citations, internal quotation marks and footnote omitted).

In this case, given the overwhelming evidence of guilt presented at Petitioner's trial, Petitioner has not shown a reasonable probability that the result of the trial would have been different if counsel had raised the desired objections. Under these circumstances, the New Jersey courts' adjudication of Petitioner's ineffective assistance of trial counsel claims was not contrary to, or an unreasonable application of Strickland and its progeny.

## 2. Effectiveness of Petitioner's Appellate Counsel

Petitioner argues in Ground Ten that appellate counsel was constitutionally ineffective by "neglect[ing] to order the full transcripts to raise and support an adequate argument regarding the

prosecutor having used race as the basis to exclude jurors." (ECF Docket No. 4, at 42.) The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396. The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

Defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). The term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega at 478. However, "it is a well established principle that counsel decides which issues to pursue on appeal." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000); see also Jones v. Barnes, 463 U.S. 745, 751 (1983).[6]

---

[6] "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. Nothing in the Constitution or our interpretation of that document requires such a standard." Jones, 463 U.S. at

(continued...)

Under these circumstances, Petitioner cannot show that counsel was constitutionally ineffective in failing to raise the <u>Batson</u> claim, or that the adjudication of his ineffective assistance of appellate counsel claim by the New Jersey courts was contrary to, or involved an unreasonable application of, <u>Strickland</u> and its progeny. <u>See</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

H.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.

CLAIRE C. CECCHI, U.S.D.J.

DATED: _____November 16_____, 2011

---

[6](...continued)

753.